UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD DUANE HILL #345396,

                Plaintiff,                              Hon. Jane M. Beckering

v.                                                Case No. 1:23-cv-982

STACIE HEIDENREICH, et al.,

                Defendants.

_____/

**REPORT AND RECOMMENDATION**

Presently before me are Defendant Raeann McIntosh's Motion for Summary Judgment (ECF No. 97) and Defendant Suzanne Groff, N.P.'s Motion for Summary Judgment (ECF No. 100). Both motions are fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** both motions and **dismiss** this action **with prejudice**.

### I.  Background

Plaintiff is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility. The events pertaining to his claims in this action occurred at the Lakeland Correctional Facility (LCF). Raeanne McIntosh, R.N., and Suzanne Groff, N.P., are the only remaining Defendants.

On April 18, 2023, Plaintiff injured his left knee when it hit some concrete during an altercation with another inmate. (ECF No. 98-4 at PageID.428.) Plaintiff was taken to the healthcare clinic in a wheelchair following the altercation, where he was seen by Stacey Heidenrich, R.N., at approximately 1:37 p.m. the same day. Nurse Heidenreich took Plaintiff's vital signs and noted that there was no deformity, bruising, or redness around his knee, although

Plaintiff said that he could not stand on it. (ECF No. 98-5 at PageID.451–52.) She noted a minor abrasion without bleeding but that there was some minor swelling below the knee in the calf area. Nurse Heidenreich cleansed the area with saline and applied a bandage. (*Id.* at PageID.452.) Plaintiff claims that she examined him for approximately 15 minutes and did not give him any pain medication or other treatment. (ECF No. 98-4 at PageID.430–31.) After Plaintiff left healthcare, he was taken to segregation.

The following day, April 19, 2023, Nurse McIntosh saw Plaintiff in segregation at approximately 2:53 p.m. She noted that Plaintiff had a normal range of motion in his knee but had significant swelling around the knee and in the lower thigh area. He reported a pain level of 8/10. (ECF No. 98-5 at PageID.448.) Nurse McIntosh scheduled Plaintiff to see the provider on April 20, 2023. (*Id.* at PageID.449.) Plaintiff told Nurse McIntosh that he needed to go to the hospital due to his pain. (ECF No. 98-4 at PageID.432.) Plaintiff claims that she did not give him any pain medication. (*Id.*)

N.P. Groff saw Plaintiff at the healthcare clinic on April 20, 2023. She took Plaintiff's vital signs and assessed a pain level of 8/10. Groff noted the Plaintiff reported pain with bending and standing and had trouble ambulating. Upon examination, Plaintiff had decreased range of motion, difficulty with extension and flexion, and medial meniscus tenderness. (ECF No. 98-5 at PageID.444–46.) Groff noted that Plaintiff had scrapes and swelling to his patellar region. (*Id.* at PageID.446.) She ordered x-rays and provided an ace bandage, an ice detail, and instructions for knee stretches. (*Id.* at PageID.444.) Plaintiff was encouraged to use over-the-counter medication as needed and to kite if his symptoms worsened or persisted. (*Id.*) Plaintiff claims that N.P. Groff did not provide him any pain medication. (ECF No. 98-4 at PageID.433.)

2

On April 26, 2023, Michael Travis, R.N., saw Plaintiff in preparation for his visit to Duane Waters Health Center. Nurse Travis noted that Plaintiff had not taken an antipyretic in the last 72 hours and did not have any over-the-counter medications in his cell. He further noted that he did not provide Plaintiff any over-the-counter medication. (ECF No. 98-5 at PageID.442.)

On April 27, 2023, Tamara Kelley, N.P., saw Plaintiff at the healthcare clinic and noted that the x-rays from Duane Waters Hospital showed a "mildly displaced tibial plateau fracture involving the lateral aspect." (*Id.* at PageID.437.) N.P. Kelley ordered Tylenol PM, Motrin PM, Toradol, crutches, and a continued ice detail. She also ordered an urgent orthopedic consultation. (*Id.* at PageID.439–40.) On April 28, 2023, N.P. Groff reviewed Plaintiff's x-rays and noted that an urgent orthopedic consult had been placed. (ECF No. 100-1 at PageID.476.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

3

### III.  Discussion

#### A.       Eighth Amendment Claim

Plaintiff claims that Defendants violated his Eighth Amendment rights by failing to give him pain medication. The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must

"place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

Plaintiff fails to present evidence showing a sufficiently serious deprivation as required for an Eighth Amendment claim. The evidence set forth above shows that Plaintiff received some treatment for his injured knee from both Nurse McIntosh and N.P. Groff. In a case such as this, where a plaintiff has received ongoing medical care and claims that his treatment was inadequate, he must present evidence from which a reasonable jury could conclude that the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (quoting *Miller*, 408 F.3d at 819). More to the point, "a prisoner suffering from pain must show that a delay in receiving treatment had a detrimental effect or that the medical provider knew that a detrimental effect was likely to occur." *Dixon v. Hall*, No. 14-6466, 2016 WL 11781885, at *3 (6th Cir. Apr. 5, 2016) (citing *Jones v. Muskegon Cnty.*, 625 F.3d 935, 945 (6th Cir. 2010)); *see also Mack v. Wilkinson*, 79 F. App'x 137,

5

139 (6th Cir. 2003) ("Mack alleged that he was in 'a great deal of pain' because he did not receive his self carry medication while he was in protective custody for ten days. However, Mack's Eighth Amendment claim based upon the ten-day delay in the receipt of his medication fails, as he did not allege, much less provide verifying medical evidence to establish, the detrimental effect of any such delay."). The Sixth Circuit has held that the requisite evidence usually takes the form of expert testimony. *Phillips v. Tangilag*, 14 F.4th 524, 536 (6th Cir. 2021).

Here, Plaintiff relies solely on his complaint allegations, not evidence, in response to Defendants' motions for summary judgment. This is insufficient to create a genuine issue of material of fact that may be submitted to a jury. *See Bennett v. Schroeder*, 99 F. App'x 707, 717 (6th Cir. 2004) (noting that "at the summary judgment stage after the close of discovery, Plaintiff can no longer simply rely on the allegations in his complaint; rather, he must present affirmative evidence supporting his allegations in order to withstand summary judgment" (internal quotation marks omitted)). Because Plaintiff fails to present evidence to establish the detrimental effect of delay, he cannot establish an Eighth Amendment violation.

In addition, courts have held that similar or even longer periods of delay in providing an inmate pain medication were insufficient to establish deliberate indifference. For example, in *Loukas v. Gundy*, 70 F. App'x 245 (6th Cir. 2003), the Sixth Circuit held that the plaintiff failed to establish a constitutional violation where he suffered with a fractured bone for 23 days before he received any pain medication. *Id.* at 247. The court observed that "[t]he fact that Loukas suffered some discomfort before he received the pain medication on December 24 is not sufficient to state an Eighth Amendment claim." *Id.* In *Warman v. Funk*, 119 F. App'x 789 (7th Cir. 2004), the Seventh Circuit held that a ten-day delay in filling the plaintiff's pain medication did not establish deliberate indifference. *Id.* at 791. *See also Reynolds v. Elizabeth*, No. 1:11-CV-P142,

2016 WL 1047796, at *7 (W.D. Ky. Mar. 10, 2016) (holding that a plaintiff who "suffered without pain medication for 10 days" but was evaluated on four occasions within 13 days of his rib injury failed to show that the defendants were deliberately indifferent to a serious medical need).

Here, Plaintiff injured his knee on April 18, 2023, and was seen by Nurse Heidenreich the same day. Nurse McIntosh saw Plaintiff on April 19 and scheduled him to see a medical provider the following day. NP Groff saw Plaintiff on April 20 and ordered x-rays and provided an ace bandage, an ice detail, and instructions for knee stretches. By April 27, 2023—less than ten days after he injured his knee—Plaintiff had received x-rays and pain medication. While Plaintiff may have been in pain during this period, on this record, Plaintiff fails to show that Defendants were deliberately indifferent to his serious medical need so as to set out a violation of the Constitution (as opposed to a state law medical malpractice claim).

### B.    Qualified Immunity

Nurse McIntosh also argues that she is entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed her conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236. Because Plaintiff has failed to establish that a constitutional violation occurred, I further recommend that Nurse McIntosh is entitled to qualified immunity.

## IV.  Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motions for summary judgment. (ECF Nos. 97 and 100.)

Dated: March 23, 2026

   /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).